# THE VILLAGE OF JEFFERSON

## *v.*

## GEORGIA CHAPMAN.

### *Filed at Ottawa January 25, 1889.*

1. RESPONDEAT SUPERIOR — *application of the rule—and exceptions thereto.*   The general rule is, that the principle of *respondeat superior* does not extend to cases of independent contracts, where the party for whom the work is to be done is not the immediate superior of those guilty of the wrongful act, and has no choice in the selection of the workmen, and no control over the manner of doing the work under the contract.

2.   One of the exceptions to this rule is, where the contract directly requires the performance of a work which, however skillfully done, will be intrinsically dangerous.   The principle upon which this exception depends for support is, that one who authorizes a work which is necessarily dangerous, and the natural consequence of which is an injury to the person or property of another, is justly to be regarded as the author of the resulting injury.

3.   Another exception to the general rule relieving an employer from liability for an injury occasioned by an independent contractor is, where the party causing the work to be done is under a primary obligation, imposed by law, to keep the subject matter of the work in a safe condition.   The principle upon which this exception is predicated is, that when a duty is so imposed, the responsibility for its faithful performance can not be avoided, and that the party under such obligation can not be relieved therefrom by a contract made with another for the performance of such duty.

4.   SAME—*injury from defective streets or sidewalks—negligence of contractor—primary liability of the municipality.*   A city or village organized under the general Incorporation law, relating to cities and villages, is under the legal duty of keeping its streets and sidewalks in a reasonably safe condition for travel.

5.   The duty of maintaining the streets and crossings in a safe condition for travel, as respects the public, rests primarily upon the corporation, and its obligation to discharge this duty can not be evaded, suspended, or cast upon others, by any act of its own.

6.   Where a dangerous excavation is made and negligently left open, without proper lights, guards or covering, in a traveled street or sidewalk, by a contractor, under the corporation, for building a sewer or other improvement, the corporation will be liable to a person injured

thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect.

7. A village employed a person to plow up and grade a street, and to plow through and widen and deepen the ditches along the sides of the street; and in doing the work, the cross-walks or aprons that spanned the ditches were removed by the contractor, and replaced by him after the ditches were enlarged, but without fastening the boards. One of the boards replaced was decayed, so that a person crossing the apron fell through the same, and sustained a serious personal injury: *Held,* that the village was liable for the injury, whether it had notice of the defect in the crossing or not.

8. A city or village can not divest itself of its duty to control and supervise the improvements and repairs of the streets and sidewalks it directs to be made, by simply making a contract therefor, and thereby exonerate itself from liability for an injury occasioned by the negligent manner in which the work is done by the contractor.

9. Where work is done on the streets of a city or village, the reasonable presumption of fact is, that it was done by authority of such city or village.

10. In this case, certain village authorities employed a person to grade a street and widen and deepen the ditches thereon. In the performance of the work, the old apron or cross-walk over the ditch was taken up, and after the ditch was enlarged, the old boards which formed a part of the cross-walk were replaced without being nailed or fastened, the middle plank being broken and decayed at one end. A day or two after, a person, in attempting to pass over the crossing after dark, stepped upon the middle board, when it tipped up edgewise, and his foot and leg went down into the ditch, giving him a fall, and inflicting a severe injury. In an action against the village, to recover for the injury, the defendant offered to prove that the work was done by the contractor without any supervision of the village authorities, and that the apron or cross-walk was placed in its position by the contractor without any supervision or without any influence, or without consent of the village authorities, which the court refused to admit: *Held,* that there was no error in refusing the proposed evidence, as it was immaterial.

11. NOTICE—*to city—as to condition of street crossing.* If a municipal corporation causes work to be done on its streets, which is, in its nature, dangerous to the public, it is bound to take notice of the character of the work and of the condition in which it is left,—whether safe or dangerous.

12. NEGLIGENCE—*ordinary care—question of fact.* In an action for a personal injury resulting from a defective sidewalk, the plaintiff is

not required to show any more than ordinary care on his part. What is ordinary care is a question of fact for the jury, as what is ordinary care in one case may not be under other and different circumstances.

13. EVIDENCE—*res gestæ.* In an action against a village for a personal injury charged to have resulted from a defective sidewalk or street crossing, evidence that there were no street lamps at the crossing is properly admissible as a part of the *res gestæ*, and as having a material bearing upon the question of due care of the defendant.

14. EXCEPTIONS—*when necessary.* Where the record fails to show that any exceptions were taken by a party to the giving of instructions asked by his adversary, no error can be assigned for the giving of the same.

15. INSTRUCTION—*should be confined to the proper pleading.* In an action against a village to recover for a personal injury from a defective crossing over a ditch, the first count charged negligence in failing to repair the crossing, while the other counts charged active misfeasance by negligent restoration of the crossing, and negligent construction of the same. Instructions were asked by the defense, to the effect that the village was not liable for the defect in the crossing unless it had actual or constructive notice of the defect: *Held,* that the instructions, not being confined to the first count, were properly refused.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

Mr. JAMES W. BROWN, and Mr. MERRITT STARR, for the appellant:

The court erred in refusing to instruct the jury that the village could not be liable without actual knowledge, or notice, actual or constructive, and in giving an instruction excluding the essential features of constructive notice. *Chicago* v. *McCarthy,* 75 Ill. 602.

The doctrine of independent contractors, and of the non-liability of their contractees, applies to municipalities. Story on Agency, sec. 454; Dillon on Mun. Corp. secs. 1027-1030; *Hale* v. *Johnson,* 80 Ill. 185; *Robbins* v. *Chicago,* 4 Wall. 657; 2 Black, 418; *Water Co.* v. *Ware,* 16 Wall. 566; *Scammon* v. *Chicago,* 25 Ill. 424.

The rule is the same in New York. *Blake* v. *Ferris,* 5 N. Y. 48; *Pack* v. *Mayor,* 8 id. 222; *Kelly* v. *Mayor,* 11 id. 432; *Storrs* v. *Utica,* 17 id. 104; *McCafferty* v. *Railway Co.* 61 id. 178; *Sweet* v. *Gloversville,* 12 Hun, 302; *Dressell* v. *Kingston,* 32 id. 533; *Gourdier* v. *Cormack,* 2 E. D. Smith, 254.

The court refused to instruct the jury that the village was not bound to light its streets, and that if the accident was due to the absence of lights, then the village was not liable. *Freeport* v. *Isbell,* 83 Ill. 440.

Messrs. MONK & ELLIOTT, for the appellee:

A municipal corporation is liable, without notice, for a defect caused by its own negligent act. *Alexander* v. *Sterling,* 71 Ill. 369; *Chicago* v. *Brophy,* 79 id. 280; *Chicago* v. *Johnson,* 53 N. Y. 91; *Springfield* v. *Le Claire,* 49 Ill. 476; *Burso* v. *Buffalo,* 90 N. Y. 679; *Russell* v. *Inhabitants of Columbia,* 74 Mo. 480; *Mayor* v. *O'Donnell,* 53 Md. 110; *Circleville* v. *Neubing,* 41 Ohio St. 465.

The burden was upon the defendant to prove absence of authority of the contractors to remove the walk. *Barnes* v. *Town of Newton,* 46 Iowa, 567; *Chicago* v. *Johnson,* 53 Ill. 91; *Chicago* v. *Brophy,* 79 id. 277.

No evidence was offered by defendant, or excluded by the court, tending to disprove authority of contractors to remove the walk. *Stull* v. *Wilcox,* 2 Ohio St. 569; *Hollister* v. *Rasnor,* 9 id. 1; *Grandalpho* v. *State,* 11 id. 114; *Kelly* v. *Highfeld,* 15 Ore. 277; *State* v. *Staly,* 14 Minn. 105; *Railroad Co.* v. *Goddar,* 25 Ind. 185; *Mitchell* v. *Chambers,* 55 id. 289; *Baker* v. *Little,* 84 id. 212; *Grader* v. *Williams,* 55 id. 461; *Whitehead* v. *McEvoy,* 85 id. 85; *Warner* v. *Water Co.* 143 Mass. 155; *Seiter* v. *Weldon,* 17 Neb. 582; *Shillito* v. *Sampson,* 61 Iowa, 40; *Klaumer* v. *Malvern,* 6 id. 72.

The offer to prove absence of control over the work by the village admitted facts already in evidence, which rendered the proposed testimony immaterial. *Comstock* v. *Gage,* 91 Ill. 328;

*Follansby* v. *Johnson*, 28 Minn. 311; *Douglas* v. *Patterson*, 4 N. Y. 347; *Hobard* v. *Plymouth Co.* 100 Mass. 159; *Crafts* v. *Johnson*, 109 id. 519; *Payner* v. *Leitenmeyer*, 45 N. Y. 47.

A village is responsible for the negligent acts of its contractors employed in removing, excavating and grading its streets, whether the work be regarded as intrinsically dangerous or not. *Brown* v. *Mayor*, 9 Heisk. 1; *Mayor* v. *O'Donnell*, 53 Md. 110; *Sinclair* v. *Mayor*, 59 id. 592; *Jacksonville* v. *Drew*, 19 Fla. 106; *Kinks* v. *Milwaukee*, 46 Wis. 465; *Russell* v. *Inhabitants of Columbia*, 74 Mo. 480; *Mayor* v. *Connolly*, 91 Ga. 258; *Scammon* v. *Chicago*, 25 Ill. 424; *City of Springfield* v. *Le Claire*, 49 id. 476; *Chicago* v. *Johnson*, 53 id. 91; *Chicago* v. *Brophy*, 79 id. 277.

The duty of superintending the work devolved upon the village engineer and street commissioner, under the general ordinances of the village. *Chicago* v. *Dermody*, 61 Ill. 431.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Georgia Chapman, the appellee, sued the appellant, the village of Jefferson, in the Superior Court of Cook county, in an action on the case, for personal injuries sustained in consequence of a fall upon a cross-walk or apron across a ditch at the intersection of St. Charles avenue and Center street in said village, and recovered a judgment for $6000 damages. On appeal to the Appellate Court for the First District, the judgment was affirmed, and the village now, by further appeal, brings the record to this court.

The facts of the case, briefly stated, are, that late in the fall of 1885, the village employed one Goven to grade a portion of St. Charles avenue, and dig out and deepen the ditches thereon, said improvement including the street intersection where appellee was injured. In the performance of this work the old apron or cross-walk over the ditch in question was taken up and the ditch deepened and widened, and, a few days before the accident, the old boards which had formed a

part of the cross-walk there, replaced, without being nailed or fastened, and the middle plank of the walk being broken and decayed at its east end.   Shortly after dark on the evening of December 2, 1885, appellee was passing over said apron or crossing, and when she stepped on the edge of said middle plank, it tipped up edgewise, and her right foot and leg went down into the ditch, and she was thrown down violently, backwards, and received severe and permanent injuries, involving the spinal and uterine regions of her body.

It is urged that the trial court erred in rejecting certain testimony offered by appellant.   The offers of testimony in question were as follows:

"We want to show that this work was done by contractors without any supervision of the village authorities; that this apron was placed in its position, and in the condition in which it was at the time of this accident, by the contractors, without any supervision, or without any influence, or without consent of the village authorities."

"Now, we offer to prove by this witness, as one of the trustees of the town of Jefferson, and Henry Wolffe, as another trustee, that they were authorized by the board of trustees of the village of Jefferson to make a contract for the grading of St. Charles avenue and Center street at the point where the accident is alleged to have occurred; that in accordance with this authority they made a contract with one Goven for the grading of such streets; that said Goven, acting under said contract, proceeded with the work of grading said streets, and that he, in the prosecution of that work, removed the apron over the ditch where the accident was alleged to have occurred; that the village retained, by the contract, no control or supervision over the work; that said contractor proceeded with said work until the close of the 2d day of December, 1884, and on the evening of said day, prior to the accident, replaced the apron in the condition in which it remained at the time of said accident."

We concur in the views expressed in the opinion of the Appellate Court filed in the case, that in each of these offers of testimony there was one essential element wanting, in that there was no intimation of a purpose or desire to prove that the work contracted for was not of itself dangerous, or would not necessarily render the street defective or unsafe or dangerous for travel, or that the removal of the apron, which formed a part of the cross-walk over the ditch, was not a necessary incident to the doing of the work contracted for. The general rule is, that the principle of *respondeat superior* does not extend to cases of independent contracts, where the party for whom the work is to be done is not the immediate superior of those guilty of the wrongful act, and has no choice in the selection of workmen, and no control over the manner of doing the work under the contract. 2 Dillon on Mun. Corp. (3d ed.) sec. 1028.

But there are exceptions to this general rule. One of these exceptions is, where the contract directly requires the performance of a work, which, however skillfully done, will be intrinsically dangerous. The principle upon which this exception depends for support is, that one who authorizes a work which is necessarily dangerous, and the natural consequence of which is an injury to the person or property of another, is justly to be regarded as the author of the resulting injury. 2 Dillon on Mun. Corp. (3d ed.) sec. 1029; *City of Joliet* v. *Harwood*, 86 Ill. 110. Another exception to the general rule, relieving an employer from liability for an injury occasioned by an independent contractor, is, where the party causing the work to be done is under a primary obligation, imposed by law, to keep the subject matter of the work in a safe condition. The principle upon which this exception is predicated is, that where a duty is so imposed, the responsibility for its faithful performance can not be avoided, and that the party under such obligation can not be relieved therefrom by a contract made with another for the performance of such duty.

In *City of Springfield* v. *Le Claire*, 49 Ill. 476, this court said: "That the city may not be liable, within the meaning of the rule *respondeat superior*, for the acts of its contractors or their workmen, while engaged in effecting a lawful object, is not the question here. The question is, was there a duty resting upon the city, growing out of the franchise conferred upon it, to keep its public streets in a safe condition for the passage of travelers and others having occasion to use them. That there was, is established by the charter bestowing the franchises. * * * It is a necessary corollary, from these premises, that a party receiving damage from neglect of this duty is entitled to his action. As the city is the principal in the duty imposed, it must occupy the same position when damages are claimed for a neglect of that duty. Neither the one nor the other can be shuffled off the city by their act. * * * The construction of the sewer by contract did not release the city from the obligation, while in process of construction, to have it so carried on as not to endanger the lives or limbs of travelers upon the street."

Dillon, in section 1027 of his work on Municipal Corporations, speaking of this duty of maintaining the streets in a safe condition for public travel, says: "It rests primarily, as respects the public, upon the corporation, and the obligation to discharge this duty can not be evaded, suspended, or cast upon others, by any act of its own. Therefore, according to the better view, where a dangerous excavation is made and negligently left open, (without proper lights, guards or covering;) in a traveled street or sidewalk, by a contractor, under the corporation, for building a sewer or other improvement, the corporation is liable to a person injured thereby, although it may have had no immediate control over the workmen, and had even stipulated in the contract that proper precautions should be taken by the contractor for the protection of the public, and making him liable for accidents occasioned by his neglect." See, also, *Storrs* v. *City of Utica*, 17 N. Y. 104; *City*

*of Detroit* v. *Corey,* 9 Mich. 165; *Mayor* v. *Brown,* 9 Heisk. 1; *Jacksonville* v. *Drew,* 19 Fla. 106; *Mayor* v. *O'Donnell,* 53 Md. 110; and the late case of *City of Birmingham* v. *McCrary,* decided by the Supreme Court of Alabama, and published in the Albany Law Journal, volume 38, No. 11, page 208, in which the authorities are collated and commented upon.

In the case at bar, the village of Jefferson is organized under the general law for the incorporation of cities and villages, (Rev. Stat. chap. 24,) and it is manifest the legal duty is imposed upon it of keeping its streets and sidewalks in a reasonably safe condition for travel. The work done by Goven was to plow up and grade the streets, and plow through and widen and deepen the ditches, and in doing such work, the cross-walks or aprons that spanned the ditches were removed. When work is done on the streets of a city or village, the reasonable presumption of fact is; that it was done by authority of such city or village. (*Chicago* v. *Johnson,* 53 Ill. 91; *Chicago* v. *Brophy,* 79 id. 277.) Here, the village made no offer to prove that the contract with Goven did not authorize or contemplate the removal of such cross-walks or aprons, or that such removal was not necessary and proper in the performance of the contract. In fact, the offer of evidence made, admitted that Goven, "acting under the contract, and in the prosecution of the work contracted for, removed the apron over the ditch where the accident occurred." The offers were merely to show that the village retained, by the contract, no control or supervision over the work, and that the apron was placed in the position and in the condition in which it was at the time of the accident, without any supervision by or consent of the village authorities. The village could not divest itself of its duty to control and supervise the improvements and repairs it directed to be made, by simply making a contract therefor. If the contractor had authority to remove the apron, then the village could reasonably have foreseen the defect created by the contractor. It was bound to know such removal would

leave an open ditch, and that an open ditch of the depth and width of that shown by the evidence, across a sidewalk, necessarily rendered the sidewalk unsafe for night travel, and in such case it was under obligation to the public to see either that guards were provided, or that the apron was replaced in such condition as to make it reasonably safe for pedestrians.

We think the action of the court in refusing the proffered testimony worked no injury to appellant, as it was immaterial, and that there was no manifest error in such action.

Complaint is also made of the refusal of the court to give the fourth, fifth and sixth instructions tendered by appellant. These instructions all embody the principle that the village could not be held negligent on account of the defect in the sidewalk and apron, without it had either actual notice, or constructive notice from lapse of time, of such defect. If a municipal corporation causes work to be done which is, in its nature, dangerous to the public, it is bound to take notice of the character of the work and of the condition in which it is left, whether safe or dangerous. (*City of Springfield* v. *Le Claire*, 49 Ill. 476; *City of Chicago* v. *Johnson*, 53 id. 91; *City of Chicago* v. *Brophy*, 79 id. 277.) Therefore, under the second and third counts of the declaration, which charge active misfeasance by the village, by negligent restoration and by negligent construction, respectively, of the cross-walk, it was unnecessary to prove notice. The said several instructions were not limited to the first count of the declaration, under which notice was a necessary element of the right of action, but applied to all three of the counts alike. The instructions were properly refused, and if given they would likely have misled the jury. It is true, that in *City of Chicago* v. *McCarthy*, 75 Ill. 602, these identical instructions were held to properly present the law; but instructions must always be based on the facts of the particular case on trial, and in that case the sidewalk "was properly and safely constructed and laid down" not more

than seven days before the accident, while here, the cross-walk was not properly and safely replaced.

It was not error to refuse the seventeenth instruction. The only degree of care that the law imposed upon appellee was ordinary care; but what is ordinary care in one condition of circumstances might not be ordinary care under other and different circumstances, and it is a question of fact for the jury, whether, in the particular case, the plaintiff was in the exercise of ordinary care.

It was not error to refuse the ninth instruction. The negligences in respect to which a cause of action was claimed were in suffering the cross-walk to remain out of repair, in improperly constructing the cross-walk, and in improperly replacing the cross-walk. The evidence that there were no street lamps at the crossing was not objected to, and besides this, it was admissible as a part of the *res gestæ*, and was competent and material evidence upon the question of due care by appellee. The proximate cause of the injury was the defective apron, and this notwithstanding the fact that if there had been a light there, appellee might have avoided the accident. Under the pleadings and the evidence it would have been misleading to have set the jury afloat on a sea of conjecture, by instructing them that if the place was not lighted, and the injury resulted solely from a failure to light the street, then they should find for the defendant.

Instruction 10 did not properly state the doctrine of comparative negligence, and there was no error in refusing it.

It is also claimed that the first instruction given at the instance of appellee was erroneous. It appears, however, from the record, that no exception was taken, at the trial, to the giving of that or any other of the instructions submitted by appellee. Appellant is therefore precluded from now insisting upon this assignment of error.

The judgment of affirmance in the Appellate Court conclusively settles all the controverted questions of fact in the case,

and that court, in their opinion, say that "the merits of the case are clearly with the plaintiff, and the verdict is well supported by the evidence." We now, in our examination of the record, find no such errors in the rulings of the trial court as require or would justify a reversal.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*